# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3885 | **DATE** | 2/5/2004 |
| **CASE TITLE** | | Simpson vs. Briley | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons set forth on the attached Memorandum Opinion and Order, all of Simpson's claims except for claims three, four, and six are denied. The Court directs the parties to file supplemental memoranda concerning the issues identified above with regard to claim six, and , with regard to claims three and four, the applicability of the "unconscionable breakdown" exception to Stone v. Powell. Petitioner's supplemental memorandum is to be filed by February 26, 2004; respondent's supplemental memorandum is to be filed by 3/18/04.  These are firm dates.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | |
| | No notices required. | | | | | |
| | Notices mailed by judge's staff. | | FEB 0 9 2004 | | | |
| | Notified counsel by telephone. | | date docketed | | | |
| ✓ | Docketing to mail notices. | | | | | 43 |
| | Mail AO 450 form. | | docketing deputy initials | | | |
| | Copy to judge/magistrate judge. | | | | | |
| OR | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 04 FEB -8 AM 11:31 | date mailed notice | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA ex rel. )
ROBERT SIMPSON, )
            )
        Petitioner, )
            )
        v. )        No. 02 C 3885
            )
KENNETH R. BRILEY, Warden, )
Joliet Correctional Center, )
            )
        Respondent. )

## MEMORANDUM OPINION AND ORDER

**DOCKETED**
**FEB - 9 2004**

MATTHEW F. KENNELLY, District Judge:

This matter is before the court on Robert Simpson's petition for a writ of habeas corpus

under 28 U.S.C. § 2254. For the reasons set forth below, the Court dismisses all but three of

Simpson's claims and orders further briefing on those three claims.

### Background

The Court takes the following account from the decisions of the Illinois Supreme Court in

*People v. Simpson*, 172 Ill. 2d 117, 665 N.E.2d 1228 (1996) (*"Simpson I"*) and *People v.*

*Simpson*, 204 Ill. 2d 536, 792 N.E.2d 265 (2001) (*"Simpson II"*). The Court presumes these

facts to be correct for purposes of habeas corpus review. *Sumner v. Mata*, 449 U.S. 539, 547

(1981); 28 U.S.C. § 2254(e)(1).

Simpson was convicted of the armed robbery and murder of Barbara Lindich at the

Fairway Food store in Glenwood, Illinois. On May 22, 1992, at approximately 10 a.m., Simpson

and Carolyn LaGrone entered the Fairway Food store and robbed it while Lurlarn Young waited

in the car. As Simpson emptied the cash register from behind the service counter, Barbara Lindich, a store customer, walked up behind LaGrone and peered over her shoulder. Simpson turned and shot Lindich, who later died as a result of the gunshot wound. Simpson then checked the safe, left the store with LaGrone, and went to the car where Young awaited.

LaGrone was arrested three days later, on May 25, 1992, and she gave a statement to the police that detailed her participation in the crime as well as that of Young and Simpson. Young was arrested the same day and also gave an inculpatory statement. She signed a consent to search the apartment where she and Simpson lived and gave the police the keys to the apartment. Simpson was arrested in the apartment and was placed in a lineup. He was identified by several eyewitnesses, including employees of the Fairway Food store, as the man they saw rob the store and shoot Lindich.

On May 26, 1992, the police took Young to the apartment building where she and Simpson lived and, with her consent, searched a storage locker that she and Simpson used. There the police found two guns, one of which was later identified as the weapon used in the murder and robbery, as well as other evidence.

At trial, three store employees identified Simpson as the man who was behind the service counter with the gun. Forensic testing experts stated that the cartridge case recovered from the scene was fired from one of the pistols recovered from the storage locker and that a bullet recovered from a door frame at the crime scene matched a test bullet fired from that pistol.

During all phases of the pretrial and trial proceedings, Simpson represented himself with the aid of a public defender acting as standby counsel. Simpson called several witnesses who were present in the store at the time of the robbery to testify on his behalf. They did not

corroborate every aspect of the prosecution witnesses' accounts, but they likewise did not contradict those witnesses' accounts of what occurred in the store. Simpson also called Young to testify, but she invoked the Fifth Amendment and refused to testify. At Simpson's request, and against the trial judge's advice, the statements that LaGrone and Young had given to the police were published to the jury. At the close of the evidence, the jury returned a verdict finding Simpson guilty of armed robbery and the first degree murder of Lindich.

At the penalty phase of the trial, the jury found Simpson eligible for a death sentence because he had committed murder in the course of a felony, *see* 720 ILCS 5/9-1(b)(6), and the case proceeded to the second stage of the penalty phase. Simpson represented himself throughout the penalty phase. The prosecution offered the testimony of various law enforcement personnel regarding several prior arrest of Simpson, and it also offered certified copies of his prior convictions for attempted murder, aggravated battery, gun possession, several theft offenses, and other crimes.

The trial judge inquired whether Simpson intended to call any witnesses on his behalf in mitigation; Simpson responded that he wanted to call Judges James Bailey, Richard Fitzgerald, and Lloyd Van Duzen as character witnesses. The trial judge instructed Simpson's standby counsel to investigate the matter and find out where the judges were currently located and if they could recollect knowing Simpson.

At the next court date, the trial judge provided Simpson with three transcripts he had previously requested. The judge informed Simpson that he had contacted Judges Fitzgerald and Bailey and that neither judge remembered Simpson. However, the judge also advised Simpson that both judges would be willing to come to court. Simpson advised the trial judge that since

3

the judges could not remember him, he wanted to go to the law library and prepare certain motions. The judge admonished Simpson that he should be more concerned with persuading the jury on the question of the death penalty, as the jury had not made a final determination regarding that issue. In response, Simpson countered that if he was sentenced to death, that sentence would allow him to "bypass the Illinois Appellate Court" and go "directly to the Illinois Supreme Court." The trial court stated, "[Y]ou have your own strategy and I have told you this before, but I still wouldn't give up on the jury." Simpson acknowledged the statement but again affirmed his decision: "I understand, your Honor, but the law indicates if that does occur, the matter goes directly to the Supreme Court."

In a final attempt to convince Simpson to reconsider his strategy, the trial judge said that if he were in Simpson's position, he would vigorously present mitigation evidence to the jury so that it would be inclined not to impose a death sentence. Simpson asked if he could have some time to contact the judges himself. When court resumed, Simpson advised that after speaking to Judge Bailey, the judge still could not recall Simpson. The trial judge again admonished Simpson that he should not hinge his strategy on post-trial motions or on an appeal. He also explained to Simpson that if one person on the jury panel disagreed with the imposition of a death sentence, Simpson would not be sentenced to death. Despite these admonishments, Simpson presented no mitigation evidence. After the conclusion of the second stage of the sentencing hearing, the jury found no mitigating factors to preclude imposition of the death penalty.

The trial judge appointed counsel to represent Simpson on his post-trial motion. In preparation for the post-trial hearing, counsel requested Simpson's medical file from the Pontiac

4

Correctional Center, which showed that Simpson had suffered from headaches, dizziness, fainting spells, and bad eyesight and had survived a gunshot wound to the head from a prior incident. At the post-trial hearing, counsel argued that Simpson was not competent to represent himself during either the trial or the sentencing phase. The trial court denied the post-trial motion and sentenced Simpson to death for the murder and thirty years imprisonment for the armed robbery.

On direct appeal, the Illinois Supreme Court affirmed Simpson's conviction and sentence. Simpson then filed a *pro se* petition for post-conviction relief and a motion to appoint counsel, which was granted. Appointed counsel filed a motion to produce handwritten statements from the Glenwood Police Department. The trial court ordered production of the requested documents. After some records were produced, counsel filed a motion to compel complete production of the documents and a motion to take depositions. The trial court denied the motions.

Prior to the initial court date on Simpson's post-conviction petition, the prosecution filed a motion for "clarification" of Simpson's competence, asking the trial judge to determine if there was a *bona fide* issue as to Simpson's competence. The trial judge determined that Simpson's condition had not deteriorated and that he was coherent and able to understand the proceedings.

The trial court eventually dismissed Simpson's post-conviction petition without an evidentiary hearing. Simpson then filed a *pro se* petition for post-judgment relief. 735 ILCS 5/2-1401. The trial court dismissed that petition as well, and Simpson appealed to the Illinois Supreme Court. That court affirmed the trial court's dismissal of Simpson's post-conviction petition and the dismissal of his petition for post-judgment relief. Simpson then filed the present

habeas corpus petition, asserting thirteen separate claims.

On January 11, 2003, Illinois Governor George Ryan commuted Simpson's death sentence to a sentence of life without parole. Following the commutation, this Court inquired whether Simpson wished to pursue his habeas corpus petition in light of the risk that he could be again subjected to the possibility of a death sentence if a new trial was ordered. Simpson's counsel reported to the Court that Simpson wished to pursue his habeas corpus petition.

## Discussion

**1.      Simpson's self-representation at trial (claims 1, 2 and 10)**

Simpson's first, second, and tenth claims arise from his decision to represent himself. In claim one, he asserts that his waiver of his right to counsel was not knowing and intelligent because it was "based on his misinformed choice of representing himself instead of being represented by counsel who had only shown his ineffectiveness." Simpson Mem. at 29. He claims that the assistant public defender who had been appointed to represent him was never prepared, that he decided to represent himself out of frustration with counsel's ineffectiveness, and that the public defender then ignored the trial judge's order to assist Simpson as standby counsel.

Simpson raised this claim on direct appeal, but the Illinois Supreme Court rejected it. *Simpson I,* 172 Ill. 2d at 132-37, 665 N.E.2d at 1237-39. Our inquiry is limited to asking whether the state court's decision was contrary to, or unreasonably applied, clearly established federal law as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2).

A state court's decision is contrary to clearly established federal law under § 22544(d)(1)

6

if the state court reaches a conclusion opposite to that reached by the United States Supreme Court on a question of law, or confronts facts materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that of the Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 405 (2000). Simpson does not contend, nor could he, that the state court's decision was contrary to United States Supreme Court precedent.

Instead, Simpson seems to contend that the state court's decision unreasonably applied those decisions.[1] "Unreasonable," as used in § 2254(d), does not mean incorrect. *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003). Rather, a state court's determination of a federal constitutional issue is unreasonable under § 2254(d) only if it is *objectively* unreasonable. *Williams,* 529 U.S. at 409. The Seventh Circuit has held that a state court's application of federal constitutional law is reasonable if it is "at least minimally consistent with the facts and circumstances of the case." *Rice v. McCann,* 339 F.3d 546, 548 (7th Cir. 2003).

The state court addressed Simpson's claim by evaluating it under the appropriate Supreme Court decisions: *Faretta v. California,* 422 U.S. 806 (1975), the Supreme Court's leading decision on a defendant's right to represent himself, and *Johnson v. Zerbst,* 304 U.S. 458 (1938), the Court's seminal decision on assessing the validity of a person's waiver of a constitutional right. *Simpson I,* 172 Ill. 2d at 132-34, 665 N.E.2d at 1237. The court analyzed the trial record to determine whether Simpson was made aware of the pros and cons of his decision, understood what he would be taking on if he chose to represent himself, and was capable of making a knowing decision. *Id.* at 134-38, 665 N.E.2d at 1237-39. It appears that

---

[1] The Court does not derive from Simpson's petition or memorandum an argument that the state court's ruling was based on an unreasonable determination of the facts presented.

Simpson chose to represent himself at least in part because he wanted to go to trial sooner rather than later, and counsel (reasonably, we might add) had balked at a quick trial, saying that this would make it impossible for him to prepare adequately. The trial judge addressed this issue with Simpson, who nonetheless insisted on representing himself and going to trial quickly.

In retrospect, Simpson's decision was undeniably a bad one. Indeed, it is hard to imagine a significant criminal case in which self representation by the defendant is the right option. But the issue of the voluntariness of Simpson's waiver does not turn on whether the waiver was a good idea or a bad idea. In *Faretta,* the Supreme Court voiced the "nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Faretta,* 422 U.S. at 817. In a case much like this one, in which the defendant sought to represent himself partly because he felt his appointed public defender was overburdened and would not pay sufficient attention to his case, *see id.* at 807, the Court made it clear that "[t]o thrust counsel upon the accused, against his considered wish, ... violates the logic of the [Sixth] Amendment," which contemplates that counsel "shall be an aid to a willing defendant – not an organ of the State interposed between an unwilling defendant and his right to defend himself personally." *Id.* at 820. In short, the only the question the trial court and the Illinois Supreme Court had to address was whether Simpson's waiver of counsel was voluntary.

The state court's rejection of Simpson's argument regarding the validity of his waiver of his right to counsel was not unreasonable. The court assessed the appropriate factors in making its decision, including Simpson's familiarity with the judicial process, his active participation in court proceedings, and the extent of the trial court's admonitions regarding the effects of self-

8

representation and the role of standby counsel. The court also addressed Simpson's contention that he was forced into self-representation by his counsel's lack of preparation; it concluded (reasonably, based on the record), that what Simpson described as lack of preparation actually was his counsel's expression of his inability to be fully prepared if forced into an immediate trial as Simpson desired. *Simpson I*, 172 Ill. 2d at 135, 665 N.E.2d at 1238. Though the trial court's admonitions to Simpson (particularly with regard to the dangers and disadvantages of self-representation) would leave something to be desired if this Court were considering the issue *de novo, see generally Faretta,* 422 U.S. at 835, *de novo* review is no longer the standard in habeas corpus cases. The Court cannot say that the Illinois court's decision was unreasonable as § 2254(d)(1) uses that term and therefore rejects claim one.

In his second claim, Simpson argues that he was incompetent to represent himself at his trial or sentencing. Respondent appears to contend that Simpson procedurally defaulted this claim by failing to present it on direct appeal. Resp. Mem. at 34. Though Simpson's ability to waive his right to counsel and represent himself was addressed by the Illinois Supreme Court on his direct appeal, this was based entirely on factors that could be ascertained from the trial record. His competency claim, by contrast, is largely based on evidence that was outside the record of his trial, specifically affidavits from several psychologists and mitigation specialists that were presented for the first time as part of Simpson's post-conviction petition. Thus there is no basis to conclude that the claim is defaulted because it should have been presented on direct appeal.

It is conceivable that respondent may be contending that Simpson should have come up with this extrinsic evidence at the time of trial, though respondent does not squarely make that argument. If that is respondent's contention, the Court rejects it. Respondent cites no cases to

support the proposition that a *pro se* criminal defendant's inability to psychoanalyze himself should be considered as a basis for procedural default. Indeed, the Illinois Supreme Court, though it articulated that Simpson's new evidence presented on post-conviction would not warrant a new trial unless it could not have been discovered prior to trial through due diligence, did not decline to consider Simpson's new evidence on this basis. *See Simpson II,* 204 Ill. 2d at 561, 792 N.E.2d at 282-83. Thus we cannot say that the state court rejected Simpson's claim based on independent and adequate state grounds.

Respondent also seems to suggest that in his post-conviction petition Simpson did not argue that he was incompetent to represent himself at trial but rather only at sentencing. The Court rejects this argument as well; Simpson's brief in his post-conviction appeal makes it clear that his claim of incompetence concerned the trial as well as the sentencing. *See* Resp. Answer, Ex. I, pp. 34-41.

As indicated above, the state court rejected Simpson's claim on its merits. The affidavits from the experts submitted as part of the post-conviction petition indicated that Simpson may suffer from attention deficit disorder and that he had a tendency to engage in impulsive decision making. Only one of them, however, indicated a belief that Simpson's decision to represent himself resulted from an impulse rather than an intelligent decision. The state court did not believe that this evidence tipped the scales against its earlier determination, on Simpson's direct appeal, that he had knowingly and voluntarily waived his right to be represented by counsel. *Simpson II,* 204 Ill. 2d at 561, 792 N.E.2d at 283.

In *Godinez v. Moran,* 509 U.S. 389 (1993), the Supreme Court held that the validity of a defendant's waiver of counsel and competency are assessed under the same standard: whether

the defendant is able to understand the nature and purpose of the proceedings against him and assist in his defense. *Id.* at 396-97. Thus the nature of state court's analysis – whether the claim of impaired competency impacted the validity of Simpson's waiver of counsel – was appropriate.

Again, the question on habeas corpus review is whether the state court's decision was reasonable, not whether this Court would have reached the same decision if we had made it in the first instance. The Court concludes, albeit somewhat reluctantly, that the state court's ruling was "at least minimally consistent with the facts and circumstances of the case" and was therefore reasonable under § 2254(d)(1). The fact that Simpson suffered from a mental impairment or disorder does not carry the day; competence centers on whether the accused "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceeding against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Even a mentally ill defendant may be found competent if he meets this standard. *See Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996) (citing *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) (stating "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial."))

On the other hand, it is rather difficult to believe that the trial judge would have handled the self-representation issue the same way had he been aware that Simpson suffered from a mental impairment or disorder. It is likely that more searching inquiry would have been made, and conceivable that a competency examination would have been ordered. But the trial judge was not aware at the time of trial of the matters that were disclosed in the course of the post-conviction proceedings. One cannot criticize the judge's failure to make more pointed inquiries

11

when he did not know what we now know with the advantage of hindsight. And the law does not require a competency examination simply because an accused person has expressed the intention to represent himself.

The Illinois Supreme Court dealt with this issue in the appropriate context when it addressed it on review of Simpson's post-conviction petition; the question was whether the new evidence tipped the scale in the opposite direction. The new evidence regarding Simpson's mental condition, though troubling when considered in light of the truism that even unimpaired defendants typically "better defend with counsel's guidance than by their own unskilled efforts," *Faretta,* 422 U.S. at 834, was not so clear as to demonstrate that Simpson's right to forego counsel should have been overridden. The decision was a reasonable one, though likely one this Court would not uphold were we considering the matter *de novo.*

Additionally, Simpson has not shown good cause to hold an evidentiary hearing on the competence issue, as required under Rule 6(a) of the Rules Governing Section 2254 cases. To satisfy this standard, Simpson would have to make "specific factual allegations ... showing reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley,* 520 U.S. 899, 909 (1997), citing *Harris v. Nelson,* 394 U.S. 286, 300 (1969). The evidence that Simpson has presented to this Court regarding his competence was presented to, and fully considered by, the Illinois Supreme Court. That court essentially found that even if it accepted Simpson's competency-related evidence as true, it would not have warranted granting him relief. As we have discussed, the state court's evaluation of the evidence was reasonable. For this reason, there is no need or basis to hold an evidentiary hearing.

Claim ten is a claim that Simpson was not competent during his post-conviction proceedings.[2] It is unclear what this would get Simpson were he to prevail (other than, perhaps, an excuse for procedural defaults made in the course of the post-conviction proceedings); incompetence at a post-conviction proceeding cannot possibly be a basis for vacating a conviction. But in any event, the Illinois Supreme Court's rejection of this claim was reasonable. Though the court analyzed the issue by reference to its own precedent, the analysis was consistent with *Godinez*. The court addressed whether Simpson was able to understand the proceedings and assist his appointed counsel. It considered the statements of Simpson and counsel, as well as the interaction between the two of them. The court concluded that Simpson understood the proceedings and was able to assist, and that his conflict with counsel centered around disagreements in legal strategy. This determination was a reasonable one.

Finally, as part of claims one, two, and ten, Simpson suggests that the right of self-representation should not apply in a capital case. It does not appear that Simpson made this argument in state court, at least not in federal constitutional terms, and thus any such claim is likely defaulted for purposes of the present case.

In any event, the only case Simpson cites as authority for this proposition is one that did not actually involve self-representation. Simpson cites *Coleman v. Mitchell*, 268 F.3d 417, 449 (6th Cir. 2001), for the proposition that "[a]pplying *Faretta* to a capital case, involving a defendant with low intelligence, limited education and an unsettling past ... hollows the Sixth Amendment." But in *Coleman*, the defendant was represented by counsel in state court. In

---

[2] The heading to claim ten also references Simpson's competence at trial, but that was already considered as part of claim two.

making the point for which Simpson cites the case, the court was addressing the respondent's contention that counsel's complete failure to conduct a mitigation investigation was justified because the defendant did not want counsel to do one; the court rejected an argument that because a defendant may represent himself, it is not ineffective assistance for defense counsel simply to follow the defendant's expressed wishes regarding how the case should be defended. And in *Coleman,* unlike in this case, the defendant had not been admonished regarding the dangers of self-representation. *See id.* at 449. In short, the case does not stand for the proposition that *Faretta* does not apply to capital cases. Moreover, the Seventh Circuit has squarely rejected that claim. *Silagy v. Peters,* 905 F.2d 986, 1007-08 (7th Cir. 1990); *see also United States ex rel. Coleman v. Ryan,* No. 97 C 2067, 1998 WL 292988, at *36-37 (N.D. Ill. May 28, 1998).

## 2.    Identification evidence (claim 3)

In his third claim, Simpson asserts his constitutional rights were violated by the trial court's refusal to suppress identification testimony that he says resulted from unduly suggestive procedures and was the fruit of an unlawful arrest.

The second aspect of this claim, which is premised on the Fourth Amendment, is not cognizable in a habeas corpus proceeding so long as Simpson was provided a full and fair opportunity to litigate the claim. *Stone v. Powell,* 428 U.S. 465, 494 (1976). Simpson concedes that so long as the state court carefully and thoroughly analyzed the facts and applied the proper constitutional doctrines, he cannot succeed on his Fourth Amendment claim. Simpson Mem. at 38. The Illinois Supreme Court's discussion of the claim on Simpson's direct appeal satisfies this standard. The police arrested Simpson after his girlfriend Lurlarn Young gave the police

permission to enter the apartment where they lived together. The evidence showed that Young and Simpson both had signed the lease, both were living there at the time, and both had keys to the premises. The state court concluded that Young's consent to enter the premises validated the arrest, citing the Supreme Court's decision in *United States v. Matlock*, 415 U.S. 164, 171 & n.7 (1974), that the Fourth Amendment is not violated by a warrantless entry inside the suspect's home when valid consent to enter is given, including by a third party with common authority over the premises. The court applied the proper principles and engaged in a thorough analysis of the applicable facts. Under *Stone,* the correctness of the state court's conclusion on the Fourth Amendment issue is not a cognizable issue in a habeas corpus case.

The Court will not dismiss this claim outright, however, for Simpson also argues that Young's consent was coerced. Simpson did not raise this claim in state court but seeks to excuse this default on the grounds that the prosecution concealed the fact of the coercion and that he learned it only after Young filed her own habeas corpus petition a number of years later. A habeas corpus petitioner may raise a Fourth Amendment claim despite *Stone* in cases in which a facially adequate state court process for addressing the claim was effectively denied to him due to an unconscionable breakdown in that process. *See, e.g., Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000); *Willett v. Lockhart*, 37 F.3d 1265, 1272-73 (8th Cir. 1994) (*en banc*). Though the parties have addressed *Stone,* they have not discussed whether, and the extent to which, Simpson's claim of concealment fits into the "unconscionable breakdown" rubric. The Court will therefore defer disposition of this aspect of claim three pending further briefing.

Simpson also argues that identification testimony should have been excluded as violative of due process because of unduly suggestive procedures. He contends that the other lineup

participants were grossly dissimilar in appearance from him in that he was the only participant with curly hair. Simpson also contends that the police told one of the witnesses after the lineup that she had selected the right man; he argues that this influenced the witness' in-court identification. In rejecting the former claim, the Illinois Supreme Court noted that all of the participants were of relatively similar height and all had similar skin tone, moustaches, fairly short hair, and wore casual clothing. It also stated that "several of the lineup participants had curly hair, although defendant's curls appear larger than those of the other men in the lineup." *Simpson I,* 172 Ill. 2d at 139, 665 N.E.2d at 1240. Though Simpson appears to dispute the court's finding that the other participants also had curly hair, that finding is entitled to a presumption of correctness, 28 U.S.C. § 2254(e)(1), and Simpson has done nothing to attempt to overcome the presumption. And even were we to find the presumption of correctness rebutted, Simpson cites no authority for the proposition that a single difference of this type between him and the other participants would warrant overturning the state court's conclusion that the lineup was not unduly suggestive. The state court applied the proper standard in deciding the claim, *see Simpson I,* 172 Ill. 2d at 140, 665 N.E.2d at 1240 (citing, among other cases, *Stovall v. Denno,* 388 U.S. 293, 302 (1967)), and its rejection of the claim was not unreasonable.

The state court likewise did not act unreasonably in rejecting Simpson's claim the store employee Kitty Koszut's in-court identification was tainted because she was told after the lineup that she had chosen the right person. The court applied the controlling Supreme Court precedent, *Neil v. Biggers,* 409 U.S. 188, 199-200 (1972), and the multiple-factor test laid down by that case to determine whether an in-court identification is reliable and properly admissible despite such taint. *Simpson I,* 172 Ill. 2d at 140-41, 665 N.E.2d at 1240. The court carefully analyzed

16

Koszut's opportunity to see the offender at the crime scene, her degree of attention, the accuracy of her description, her degree of certainty about the identification, and the passage of time. *Id.* at 141, 665 N.E.2d at 1240-41. Its conclusion that "Koszut had adequate independent recollection to make her in-court identification testimony reliable," *id.* at 141, 665 N.E.2d at 1241, was a reasonable one in light of the circumstances.

### 3.     Search of storage locker (claim 4)

Claim four is another Fourth Amendment claim; Simpson attacks the state courts' refusal to suppress evidence that was found in a search of a storage locker at the apartment building where he lived. The search was conducted pursuant to the consent of Lurlarn Young, with whom Simpson concedes he shared not only the apartment but also the storage locker. Simpson contends that Young's consent to search the locker did not permit the police to open closed containers within the locker. Simpson raised this claim in state court, and it appears that it was decided against him in the trial court following consideration of his motion to suppress. The Illinois Supreme Court held that the claim had been waived, as Simpson had not raised it in any of the post-trial motions that he or appointed counsel had filed. *Simpson I,* 172 Ill. 2d at 146, 665 N.E.2d at 1243. For the same reason, this Court finds that claim to have been procedurally defaulted, a default for which Simpson offers no "cause" of the type needed to overcome the default, and thus we decline to consider it on the merits. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 749-50 (1991).

As with his Fourth Amendment claim concerning the entry of the police into his apartment, Simpson also argues that Young's consent was coerced, a contention he never made in state court for (he says) the reasons previously referenced. As with claim three, the Court will

defer disposition of this aspect of claim four pending resolution of claim six, which directly concerns the alleged concealment of the coercion of Young.

4.    **Concealment of alleged coercion of Lurlarn Young's consent (claim 6, part 1)**

Claim six overlaps with claims three and four. Simpson contends that he was denied due process by the prosecution's failure to call Lurlarn Young to testify at trial. He argues that the prosecution acted as it did to prevent him from learning that the police had coerced her to consent to their entry and search of the apartment and storage locker. Simpson asserts that the prosecution's actions violated *Brady v. Maryland,* 373 U.S. 83 (1963), and its progeny, which require the prosecution to disclose evidence favorable to the accused on the issue of guilt or punishment. Simpson has cited no authority for the proposition that *Brady* requires the prosecution to call witnesses at trial, but his claim amounts to a potentially viable *Brady* claim nonetheless: if the prosecution or police had evidence that Young's consent to search was coerced, *Brady* may have required disclosure of that evidence.

Simpson did not raise this claim in state court; the factual basis for the claim comes from Young's own habeas corpus petition, filed in 1998, and evidently not discovered by Simpson until after his post-conviction petition was dismissed. In her habeas corpus petition, Young asserts that after her arrest, she

> suffered pain and distress, because she was a diabetic and told the Glenwood Police she needed her medication. Instead of the police taking her to a hospital, they told her if she wanted her medication she would have to sign a consent to search form, because they could not go into her home to get her medication without it. The petitioner told the police again she needed her medication because she was feeling like she was going into a diabetic coma. After hours of duress and coercion they (the police) sent in A.S.A. Mary D. Mallo to intimidate her. ... This became intolerable so she sign[ed] the form thinking she would get her medication. She does not know what time it was, only that the police and the

18

state's attorneys continue[d] to persist that if she wanted her medication this was the quickest way to get it.

Petition in *United States ex rel. Young v. Roth,* No. 98 C 3504, p. 12 (attached to Simpson's Amended Petition as Exhibit A).[3] Simpson also alleges that Young was told that if she did not give consent to search her residence, she would "fry"; this allegation is not included in Young's habeas corpus petition, but Simpson's counsel says Young disclosed it to him in an interview prior to the filing of the amended habeas corpus petition. Based on this evidence, Simpson argues that Young's consent was coerced and therefore invalid; he contends that this information should have been disclosed by the prosecution under *Brady.*

Simpson concedes this claim is procedurally defaulted but argues there is cause excusing the default precisely because the prosecution concealed the information that forms the basis for the claim. The prosecution's concealment of evidence supporting a claim may constitute cause excusing a procedural default. *See, e.g., Crivens v. Roth,* 172 F.3d 991, 995-96 (7th Cir. 1999); *Julius v. Jones,* 875 F.2d 1520, 1525 (11th Cir. 1989). Simpson has shown cause sufficient to meet his burden on that point.

The issue of prejudice, the second half of the showing needed to overcome a procedural default, is a bit more complicated. This issue essentially merges with the underlying *Brady* question, as a *Brady* violation does not warrant overturning a conviction unless it is material, in the sense that disclosure of the allegedly suppressed evidence would have made a different result reasonably probable. This standard is met if the prosecution's "evidentiary

---

[3] Young's habeas corpus petition was later dismissed by Judge Charles Kocoras largely on procedural default grounds. *United States ex rel. Young v. Roth,* No. 98 C 3504, 1999 WL 51802 (N.D. Ill. Jan. 29, 1999).

suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley,* 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley,* 473 U.S. 667, 678 (1985)).

It is not clear whether Simpson can meet this standard. First, the state court found, in a different context, that even if the evidence from the storage locker should have been excluded, the error was not "substantial" as would be necessary to invoke the doctrine of plain error. *Simpson I,* 172 Ill. 2d at 146-47, 665 N.E.2d at 1243. This Court recognizes that the issue raised by Simpson in his habeas corpus petition reaches beyond the issue of the search of the storage locker and also concerns the legality of the entry into the apartment that led to his arrest and the lineup identifications. But in any event, the parties have not addressed whether the state court's finding with regard to the evidence from the storage locker has any bearing on our consideration of the *Brady* issue.

Second, there is a significant question, not addressed by either side, whether the nondisclosure of the alleged coercion of Young's consent can be considered a *Brady* violation to begin with. It is not entirely clear that evidence of misconduct that might lead to suppression of evidence on Fourth Amendment grounds must be disclosed pursuant to *Brady.* Alternatively, Simpson may be contending that evidence of the coercion of Young should have been disclosed in the context of the pretrial motions, on the theory that this would impeach the testimony of a prosecution witness, but it is not entirely clear that the prosecution's *Brady* obligations extend to pretrial motion hearings. *See, e.g., United States v. Stott,* 245 F.3d 890, 901-03 (7th Cir. 2001) (collecting cases from other circuits). Finally, it is conceivable that evidence regarding the alleged coercion of Young might have been subject to *Brady* and its progeny because it would have impeached the testimony of a prosecution witness at trial.

The Court is not willing to address these issues on our own without the benefit of further briefing by the parties. We therefore will defer further consideration of this part of claim six (including consideration of whether to hold an evidentiary hearing) until after the filing of supplemental memoranda.

**5.    Presentation of perjured testimony (claim 8)**

Simpson's eighth claim is based on the prosecution's alleged knowing presentation of perjured testimony. The state court held on post-conviction review that this claim was waived because it was not presented on direct appeal, but it went on to consider the claim on its merits, and respondent does not contend in this Court that the claim is procedurally defaulted. The state court carefully reviewed the basis for Simpson's claim, discussing the testimony at issue in detail and concluding that Simpson had failed to make any showing that certain of the testimony was false and that even assuming the falsity of the remaining testimony at issue, it had no impact on the jury's consideration of the case. *Simpson II,* 204 Ill. 2d at 553-55, 792 N.E.2d at 278-79. In his habeas corpus petition and supporting memorandum, Simpson has made no effort to show that the state court's decision was unreasonable. The Court therefore rejects this claim.

**6.    Miscellaneous *Brady* violations (claim 9)**

In his ninth claim, Simpson argues, in addition to the claim of presentation of perjured testimony, that the prosecution did not disclose that a person who had purportedly identified Simpson from the lineup had been hypnotized to assist her in remembering the events, and did not tender interview notes of certain witnesses and a tape of an interview of one witness by an insurance investigator. The hypnotized witness, however, did not testify at trial or any pretrial hearing. The notes were made by a police detective who testified that he incorporated them into

a typewritten police report and then destroyed them. The prosecution subpoenaed the insurance investigator's tape after the defense learned of its existence, but the tape no longer existed. When Simpson raised these claims in his post-conviction petition, the Illinois Supreme Court rejected them, finding that Simpson had failed to show how any of this evidence would have helped him. *Simpson II*, 204 Ill. 2d at 555-58, 792 N.E.2d at 279-81.

In this Court, Simpson has failed to show that the state court's ruling was unreasonable. The state court applied the governing Supreme Court decisions, and, in particular, the Supreme Court's standard for determining whether undisclosed evidence is material. *Simpson II*, 204 Ill. 2d at 556, 792 N.E.2d at 279-80, citing *United States v. Bagley*, 473 U.S. 667, 682 (1985) and *Brady*, 373 U.S. at 87. The court also analyzed the allegedly undisclosed evidence in detail. *Simpson II*, 204 Ill. 2d at 556-58, 792 N.E.2d at 280-81. The ruling was a reasonable one and thus cannot be overturned by this Court.[4]

## 7. Use of victim impact testimony (claim 5)

Claim five involves the admission of victim impact testimony at Simpson's capital sentencing proceeding. The Court agrees with respondent that Simpson forfeited review of this issue by failing to object at the time the testimony was offered. He has offered no showing of "cause" or other basis to overcome his procedural default.

## 8. Prosecutor's improper arguments at sentencing (claim 6, part 2)

The second part of Simpson's sixth claim is his allegation that the prosecutor made an improper argument to the jury at the penalty phase. In rebuttal, the prosecutor, paraphrasing

---

[4] In his memorandum, Simpson refers to purportedly missing "license plate information," but this reference is not explained, and the state court's decision does not refer to any such information.

Simpson's argument, reminded the jury that he had said, "go ahead and kill me." He said that if Simpson really felt that way, he would have used his gun on himself. But, the prosecutor said,

> [Y]ou don't want to die, Mr. Simpson. That is a ploy you are using against [the jurors], to make them feel guilty if they sentence you to death, and it's not them who [are] sentencing you to death, Mr. Simpson, it's the State of Illinois. The law sentences you to death. The law that you couldn't follow ... [t]hat's who did it, not these people, but you go ahead and make them feel guilty like you want to do.

*Simpson I,* 172 Ill. 2d at 148, 665 N.E.2d at 1244 (quoting from transcript). The prosecutor made a similar point again later in his argument.

Simpson did not object to these comments at the time they were made. The Illinois Supreme Court held that the issue had been waived. *Id.* at 149, 665 N.E.2d at 1244. This is a procedural default that bars consideration of the claim in this Court absent a showing of cause and prejudice or a fundamental miscarriage of justice. *E.g., Coleman,* 501 U.S. at 749-50. Because Simpson has advanced no argument as to why this Court should disregard the default, the Court is precluded from reviewing the claim on its merits.

### 9. Denial of mitigation expert; inadequacy of standby counsel (claims 7 and 11)

In his seventh claim, Simpson alleges that he was denied the services of a mitigation expert after (he claims) the public defender appointed as standby counsel failed to conduct a mitigation investigation. In state court, Simpson argued this as a claim of ineffective assistance of counsel. *See Simpson II,* 204 Ill. 2d at 562, 792 N.E.2d at 283; *see* Resp. Answer, Ex. I, pp. 43-53. In this Court, he argues it as a violation of *Ake v. Oklahoma,* 470 U.S. 68 (1985), in which the Supreme Court made it clear that an indigent defendant is entitled to expert assistance when necessary to an adequate defense.

Though it is not entirely clear whether a claim based on *Ake* may be said to have been

fairly presented by Simpson to the state court, *see Picard v. Connor,* 404 U.S. 270, 275 (1971), the Court need not address that question. Whatever the constitutional basis for Simpson's claim in his habeas corpus petition, it is predicated upon his contention that appointed counsel did not perform an adequate mitigation investigation. But Simpson made a voluntary choice to represent himself; though he had standby appointed counsel, Simpson was advised by the trial judge that the primary responsibility for investigating and presenting mitigating evidence rested on his own shoulders. Though Simpson, who was in custody while awaiting trial, obviously could not perform his own investigation on the street, having made the decision to act as his own counsel it was up to him to initiate the investigation by giving the necessary directions to standby counsel. Evidently Simpson did not do so, for he makes no argument that standby counsel failed to carry out any directions or requests with regard to the issue of mitigation. Under these circumstances, the state court's decision that standby counsel's efforts did not fall short of his constitutional obligations was not unreasonable. *See Simpson II,* 204 Ill. 2d at 563-65, 792 N.E.2d at 284-86. And the law does not permit a defendant who voluntarily elects to represent himself to argue his *own* ineffectiveness. *McKaskle v. Wiggins,* 465 U.S. 168, 177 n.8 (1984); *Faretta,* 422 U.S. at 834 n.46.

Simpson's eleventh claim is that standby counsel failed to perform adequate pretrial and mitigation investigations. In his amended petition, Simpson contends that the state court improperly narrowed this claim to the mitigation investigation only. The Court disagrees. We have reviewed Simpson's appeal briefs submitted in both his direct appeal and his appeal from the denial of post-conviction relief. No claim asserting standby counsel's ineffective assistance was raised in the former brief. *See* Respondent's Answer, Ex. D. And the claim of ineffective

assistance raised in the latter brief was in fact focused on the issue of mitigation. *See* Respondent's Answer, Ex. I, pp. 46-51. Any claim based on the pretrial, guilt-innocence investigation performed by standby counsel has thus been procedurally defaulted, and no excuse for the default has been offered by Simpson. And as this Court has found with regard to claim seven, the state court's rejection of Simpson's rejection of the ineffective assistance claim concerning standby counsel's mitigation investigation was reasonable.

10.     **Remaining claims (claims 12 and 13)**

Claim twelve appears to be a rehash of a melange of certain of Simpson's other claims, and claim thirteen is a claim of cumulative error. Claim twelve, which appears to have been included in appointed counsel's amended habeas corpus petition to ensure that all the issues in Simpson's separately filed *pro se* petition had been covered, does not appear to the Court to state any new, separate, or additional grounds for relief from those we have already addressed. The claim is denied. Claim thirteen is also denied; Simpson has articulated no basis to believe why, in this case, the whole is greater than the sum of its various parts.

**Conclusion**

For the reasons stated above, all of Simpson's claims except for claims three, four, and six are denied. The Court directs the parties to file supplemental memoranda concerning the issues identified above with regard to claim six, and, with regard to claims three and four, the applicability of the "unconscionable breakdown" exception to *Stone v. Powell*. Petitioner's supplemental memorandum is to be filed by February 26, 2004; respondent's supplemental

memorandum is to be filed by March 18, 2004. These are firm dates.

Date:   February 5, 2004

MATTHEW F. KENNELLY
United States District Judge