# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 3885 | DATE | 6/28/2004 |
| CASE TITLE | | Simpson vs. Briley | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies Simpson's third, fourth, and sixth claims. Judgment in entered in favor of respondent.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 3 0 2004 date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
ex rel. ROBERT SIMPSON, )
 )
        Petitioner, )
 )
vs. ) Case No. 02 C 3885
 )
KENNETH R. BRILEY, )
 )
        Respondent. )

DOCKETED
JUN 30 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Robert Simpson was convicted of armed robbery and first degree murder in Illinois state court and was sentenced to death (later commuted to a sentence of life without parole). His conviction and sentence were affirmed on appeal, his petition for post-conviction relief was denied, and that denial was also affirmed on appeal. Simpson then petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254, contending that his constitutional rights had been violated in connection with his conviction and sentence. On February 5, 2004, this Court issued a ruling denying all but three of Simpson's claims and requested supplemental briefing on those three. *United States ex rel. Simpson v. Briley*, No. 02 C 3885, 2004 WL 419788 (N.D. Ill. Feb. 5, 2004). The parties have submitted supplemental briefs, and the remaining claims are now ripe for ruling.

### Discussion

The Court will discuss the facts and procedural history of the case only as necessary to

address Simpson's remaining claims.

Simpson was arrested in the apartment he shared with his girlfriend Lurlard Young. Prior to trial, Simpson, who was representing himself, moved to quash the arrest on the grounds that it was the product of an illegal entry and to suppress evidence obtained as a result of the arrest. He also moved to suppress the fruits of a search of a storage locker in the basement of the apartment building that took place the day after his arrest. Young had consented, at separate times, to both the entry into the apartment and the search of the storage locker. Simpson contended that because he was in the apartment at the time of the entry, it was improper to rely on Young's consent to enter. *See* Tr. 1660-61 (argument on motion). He also contended that both of Young's consents had been the subject of coercion, noting that Young had been in police custody for several hours before giving consent. *See* R. C182 (motion to quash arrest), ¶ 5; Tr. 801.

The trial court held an evidentiary hearing on Simpson's motion. The hearing began just before trial was scheduled to commence and was completed after jury selection had begun. Glenwood Police Sergeant Alexander DiMare, who had obtained Young's consent, testified at the hearing.[1] He testified that after the police discovered the fingerprints of Carolyn Lagrone at the store where the robbery and murder had occurred, Lagrone was found and brought to the police station. She gave a statement implicating herself and Simpson in the robbery, identifying Simpson as the shooter of the murder victim, and identifying Young as the getaway driver. Tr. 805-06. Lurlarn Young was then brought to the police station, given the Miranda warnings, and questioned after she agreed to speak to the police. Tr. 809. Young also implicated Simpson in

---

[1] Other witnesses also testified, but their testimony is not material to the claims addressed in this decision.

2

the robbery and murder. Tr. 807. In the presence of Mary Mallo, an assistant state's attorney, Young gave consent to search her apartment, which she shared with Simpson. Tr. 810-11. DiMare identified the signed consent form and read it into the record; the form stated that Young had been advised of her right to refuse consent and was consenting freely and voluntarily, without any threats or promises. Tr. 811-14. Young gave the key to the apartment to the officers, Tr. 815, who later that day entered the apartment, found Simpson there, and arrested him. The following day, Young gave the police consent to search the basement storage locker in the presence of Mike Baumel, an assistant state's attorney, and she signed another consent form. Tr. 816. At the hearing, DiMare identified this form and read it into evidence; its text was essentially the same as that of the first form. Tr. 817-20. DiMare took Young to the apartment building, and the storage locker was searched. Young pointed out bags that contained firearms, Tr. 820; one of these was later matched to the gun used in the shooting.

On cross examination, Simpson did not focus on what had been done to obtain Young's consent, other than to establish that Young had been in police custody for some period before giving the first consent. Simpson elicited from DiMare that the consent form Young signed stated that her consent had been obtained voluntarily and without threats, promises, or duress; he attempted to make the point that being deprived of liberty, as Young was at the time of the consent, was a form of duress. Tr. 846-47. He also asked DiMare the following question:

> Q: Sergeant DiMare, you indicated to the Court that Miss Young had signed a consent to search freely, is that correct?
>
> A: That's correct.

Tr. 860. Simpson did not call to testify either of the prosecutors said to have witnessed the

3

consents. Though Simpson now complains of the prosecution's failure to call Young to testify, Simpson likewise did not call Young to question her about the circumstances of her consent. Later, when called by Simpson to testify during the trial, Young claimed her privilege against self-incrimination. But there is nothing to indicate if she would have done the same if called at the pretrial hearing to testify regarding the circumstances of her consents to search. Simpson has not explained why he did not attempt to call Young at the pretrial hearing. It does not appear he believed at that point that she would refuse to testify; Simpson noted during his argument on the pretrial motion that Young was "one of their [the prosecution's] witnesses," Tr. 1706; *see also* Tr. 1688 (stating that Young "is now their witness").

The trial judge denied Simpson's motion to quash the arrest and suppress evidence, ruling that Young had actual authority to consent to the entry of the apartment and the search of the storage locker and that she had consented freely and voluntarily, and that in any event, exigent circumstances existed permitting the entry to the apartment. Tr. 1714-18. On appeal, the Illinois Supreme Court affirmed the trial judge's findings on the consent issue and declined to address the exigent circumstances issue because it was unnecessary to do so. *People v. Simpson*, 172 Ill. 2d 117, 144-46, 665 N.E.2d 1228, 1241-43 (1996).

Simpson's third claim in his habeas corpus petition is that the trial court should have suppressed identification testimony from the lineup that followed the allegedly unlawful arrest. His fourth claim is that the trial court should have suppressed the evidence found in the storage locker. Both claims involve the validity of Young's consents to enter the apartment and search the storage locker. Simpson says that Young's consent was coerced, and as support he relies on Young's federal habeas corpus petition, filed in June 1998. *See* Amended Habeas Corpus

4

Petition, Ex. A (copy of petition in *United States ex rel. Young v. Roth*, No. 98 C 3504 (N.D. Ill.)). In that petition, Young alleged that she was denied access to her medicine for her diabetic condition as leverage to coerce her to give the police consent to search her home. *Id.* at 12.

As this Court pointed out in its February 5 ruling, claims like these that are premised on alleged violations of the Fourth Amendment are not cognizable in a federal habeas corpus proceeding if the petitioner received a full and fair opportunity to litigate the claims in the state courts. *Stone v. Powell*, 428 U.S. 465, 494 (1976). But if the petitioner was effectively precluded from using the opportunity for litigation provided in state court due to an "unconscionable breakdown" in that process, *Stone* does not bar federal consideration of the claims. *See, e.g., Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000); *Willett v. Lockhart*, 37 F.3d 1265, 1272-73 (8th Cir. 1994) (*en banc*); *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). Because Simpson claimed that evidence of the coercion of Young's consent had been withheld from him during the state court proceedings, the Court asked the parties to brief whether that allegation, if proven, would bring into play the unconscionable breakdown exception to *Stone*. As part of its submission, respondent argues that irrespective of that issue, Simpson procedurally defaulted the coercion claim by failing to bring it in state court.

Before discussing the procedural default issue, we address a threshold point. Upon further review of the evidence supporting the claim that Young was coerced to consent, that allegedly withheld evidence has no bearing on Simpson's attack on the search of the storage locker. In her habeas corpus petition, Young contended her medication was withheld on the day of her arrest, before and during the time she was questioned by assistant state's attorney Mallo, and that she signed the consent to search the apartment because of this coercion. *See* Amended

5

Habeas Corpus Petition, Ex. A at 12. But Young made no similar claim regarding her consent to search the storage locker, which she gave the following day. And there is no hint in Young's habeas corpus petition or in Simpson's papers that the police obtained any evidence during their entry to the apartment that they used to obtain the second consent from Young the following day. In short, there does not appear to be any basis in the supposedly withheld evidence or otherwise to support a claim that Young's consent to search the storage locker was procured by coercive tactics or that it was the product of the same alleged coercive conduct that produced the consent to search the apartment.

This cuts the legs out from under Simpson's fourth claim, regarding the search the storage locker. Because there is no indication that evidence of coercion affecting that consent was withheld from Simpson, there is no basis to find that the "unconscionable breakdown" exception to *Stone v. Powell* applies to that claim. The Court concludes the fourth claim is barred by *Stone* and cannot be raised in federal court.

Respondent asserts that Simpson's third claim, concerning the alleged coercion of Young's consent to enter the apartment, was procedurally defaulted and that Simpson has not shown cause for the default and actual prejudice resulting from the alleged constitutional violation, as is necessary to excuse the default. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Respondent is correct that Simpson never raised this claim in the state court and that a procedural default therefore occurred. But Simpson has alleged that he did not discover the basis for the claim until some time after Young filed her federal habeas corpus petition in June 1998; by then his conviction had been affirmed on direct appeal, and his post-conviction petition had been dismissed. As this Court indicated in its February 5 ruling, the state's concealment of

evidence – in this case its alleged concealment of the coercion – may serve as cause for a procedural default. *See Simpson*, 2004 WL 419788, at *10 (citing cases). Respondent contends that Simpson should have learned of the facts supporting the claim from Young at some earlier point, but there is no evidence that he had any means to do so, other than a passing and unexplained reference in the ruling on Young's habeas corpus petition suggesting that Simpson had assisted her at some unspecified earlier point in preparing a motion to vacate her guilty plea. Under the circumstances, Simpson has made a sufficient showing of cause for the default.

Simpson has failed to show, however, prejudice resulting from the alleged violation of his constitutional rights, that is, that the error worked to his "*actual* and substantial disadvantage," *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original) – in the context of withheld evidence, a showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 683 (1985)); *id.* at 282 (stating that materiality component of *Brady v. Maryland* "parallel[s]" prejudice aspect of cause and prejudice standard). The evidence used at trial that arguably was obtained due to Simpson's allegedly unlawful arrest involved lineup identifications of Simpson by witnesses from the store where the murder and robbery took place. The trial court found that exigent circumstances supported the entry into the apartment during which Simpson was arrested, and thus it would not have excluded the identifications even had it found Young was coerced to give consent. But assuming the lineup identifications had been excluded – and assuming the witnesses' in-court identifications were likewise barred – the prosecution would have had more than sufficient evidence to obtain a conviction, including Carolyn Lagrone's testimony regarding

7

her commission of the robbery with Simpson and Simpson's shooting of the murder victim; forensic evidence that a cartridge case recovered from the crime scene came from a gun found in the storage locker, and that the same gun had fired a projectile found in a door frame at the crime scene; and the custodial statements of Lagrone and Lurlarn Young, which Simpson himself introduced in evidence and which also fingered him for the robbery and murder. Under the circumstances, the Court finds that Simpson has failed to show the prejudice necessary to excuse the procedural default of the consent issue.

Simpson's only remaining claim is his sixth, a claim under *Brady v. Maryland* that the prosecution withheld the evidence that the authorities had coerced Young's consent. This claim fails for the reasons discussed above; though Simpson has shown cause for his failure to raise the claim in state court, he has not shown prejudice. And for the same reasons, even if Simpson could overcome the "prejudice" hurdle, and could make a persuasive argument that *Brady* extends to evidence tending to show that the authorities violated the defendant's Fourth Amendment rights, he would be unable to show the materiality of the withheld evidence that is necessary to a successful *Brady* claim.

## Conclusion

For the reasons stated above, the Court denies Simpson's third, fourth, and sixth claims. The Clerk is directed to enter judgment in favor of respondent.

MATTHEW F. KENNELLY
United States District Judge

Date: June 28, 2004